**ST. LUKE'S EPISCOPAL HOSPITAL and the Texas Heart Institute, Appellants,**

v.

**Raymon POLAND, Individually and as Independent Administrator of the Estate of Jessie Poland, Robert Martin, and Frank Martin, Appellees.**

No. 01–06–01038–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 6, 2009.

Andrew Lee Payne, Sandrice M. McGlown, Payne & Payne & Associates, Henry W. Curtis Jr., Houston, for Appellants.

Dale Burrus Frisby, Leah Ann Greene, Kroger, Myers, Frisby & Hirsch, Chetna Gosain Koshy, John R. Strawn, Jr., Cruse, Scott, Henderson & Allen, L.L.P., Cynthia D. Rendon, Lauren B. Harris, Frank A. Doyle, Tamara M. Madden, Melanie Ann Rubinsky, Johnson, Spalding, Doyle, West & Trent, L.L.P., Houston, for Appellees.

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION ON REHEARING

TIM TAFT, Justice.

Our opinion in this cause issued on February 14, 2008. Appellees, Raymon Poland, individually and as independent administrator of the estate of Jessie Poland, Robert Martin, and Frank Martin ("the Poland parties"), timely moved for rehearing to the panel and for en banc reconsideration to the Court. Appellants, St. Luke's Episcopal Hospital and the Texas Heart Institute, also timely moved for rehearing to the panel. On March 13, 2008, the Court denied the Poland parties' rehearing motion, but their motion for en banc reconsideration remained pending, as did appellants' motion for rehearing, thus maintaining our plenary power over the appeal. *See* Tex.R.App. P. 19.1(b); *see also City of San Antonio v. Hartman,* 201 S.W.3d 667, 670–71 (Tex.2006). We now grant appellants' motion for rehearing, withdraw our opinion and judgment issued February 14, 2008, and issue this opinion and judgment in their stead. Nonetheless, we do not change the disposition of the appeal. The Poland parties' motion for en banc reconsideration is rendered moot by the granting of appellants' motion for rehearing and our withdrawing and reissuing our opinion and judgment.[1] *See Brook-*

---

1. After the Poland parties' motion for en banc reconsideration was rendered moot, during the Court's plenary power over this case, and before today's opinion and judgment had issued, en banc consideration of the case was requested from within the Court. *See* Tex R.App. P. 41.2(c). A majority of the Justices of the Court voted to deny en banc consideration

*shire Brothers, Inc. v. Smith,* 176 S.W.3d 30, 41 n. 4 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (op. on reh'g) (noting that motion for en banc reconsideration becomes moot when motion for rehearing is granted and new opinion and judgment issue).

Appellants appeal from the trial court's interlocutory order denying their motion to dismiss the health-care-liability claims of the Poland parties based on the Poland parties' failure timely to serve an expert report on appellants. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon 2008). We determine whether an expert report served on appellants more than 120 days after health-care-liability claims were first alleged against them, but which was provided to appellants' counsel before the filing of a petition alleging such claims against them, was timely "served" under the version of section 74.351(a) that applies to this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon Supp.2008) (providing that trial court must dismiss health-care-liability claim against defendant if claimant fails to serve expert's report and *curriculum vitae* on that defendant within period specified by section 74.351(a)); Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (providing that claimant must serve each defendant against whom health-care-liability claim is asserted with expert's report and *curriculum vitae* not later than 120 days of claim's filing) [hereinafter, "former section 74.351(a)"],[2] *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen.

Laws 1590, 1590 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2008)). Concluding that the report was untimely served, we reverse the judgment in part, affirm it in part, and remand the cause with instructions.

## Background

The factual recitations come mainly from the Poland parties' petitions. Appellant Raymon Poland was the husband of Jessie Poland; the remaining appellants were his natural children. In August 2003, Jessie Poland, under the care of Dr. James Willerson (an appellee in a related appeal) and Dr. Ott (an appellee in another related appeal), was hospitalized at St. Luke's Episcopal Hospital and the Texas Heart Institute for an elective surgical procedure to repair her heart's mitral valve. Dr. Alina Grigore, who was employed by Dr. Arthur S. Keats & Associates (both appellees in another related appeal), was the anesthesiologist for the surgical procedure. The Poland parties alleged that, at the time of surgery, Jessie Poland's blood contained a level of Coumadin that the health-care providers should have known rendered her blood fully anti-coagulated and, thus, rendered surgery dangerous. The surgery was nonetheless performed; Jessie Poland bled internally; and she died several days later of multi-system organ failure.

In their original and first amended petitions, both of which were filed on October 24, 2005, the Poland parties sued, among other defendants, St. Luke's Episcopal

---

of the case. *See id.* Along with the Court's opinion that issues today, Justice Jennings, joined by Justice Bland, issues an opinion dissenting from the denial of en banc consideration, and Justice Taft issues an opinion concurring in the denial of en banc consideration. TEX.R.APP. P. 47.5.

**2.** The current version of section 74.351(a) applies to causes of action that accrued after September 1, 2005, the current act's effective date. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, §§ 2–3, 2005 Tex. Gen. Laws 1590, 1590. Because the Poland parties' causes of action accrued before September 1, 2005, the prior statutory version applies.

Hospital, the Texas Heart Institute, the University of Texas Health Science Center at Houston, Dr. Arthur S. Keats & Associates, and Drs. Ott, Grigore, and Willerson for Jessie Poland's wrongful death, for her pain and suffering and medical costs before her death, and for her burial expenses. By the time of the trial court's complained-of ruling, the Poland parties had amended their petition two more times to allege the following causes of action or theories of recovery against all defendants, including appellants: (1) negligence, (2) gross negligence, (3) actual and constructive fraud, (4) intentional infliction of emotional distress, (5) assault and battery, (6) intentional and negligent abandonment, (7) breach of fiduciary duties, (8) "negligent breach of fiduciary duties," (9) malpractice, (10) "lack of proper informed consent," (11) "tampering with official medical records," (12) "forgery," (13) violations of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"),[3] and (14) conspiracy among all defendants. The "live," third amended petition also added allegations that the defendants had altered Jessie Poland's medical records and forged Raymon Poland's signature on unspecified hospital documents. The Poland parties sought actual and exemplary damages.

Appellants moved, under Texas Civil Practice and Remedies Code section 74.351(b), to dismiss the Poland parties' health-care-liability claims against them for failure to serve an expert report upon them or their attorneys within 120 days of the filing of these claims. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (providing that trial court must dismiss health-care-liability claim against defendant if claimant fails to serve expert's report and *curriculum vitae* on that defendant within period specified by section 74.351(a)); *see also* Act of June 2, 2003, 78th Leg., R.S.,

ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590. Appellants' motion to dismiss alleged that the Poland parties had served their expert report 123 days after these claims had been filed against appellants. Alternatively, appellants argued that, even if the court determined that service was timely, the court should nonetheless strike the expert report for substantive insufficiency. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp. 2008) (requiring each defendant whose conduct is implicated by health-care-liability claim to file and to serve any objection to expert report's sufficiency within 21st day of report's service); *id.* § 74.351(*l*) (Vernon Supp.2008) (requiring court to grant challenge to adequacy of expert report only if it appears that report does not represent objective, good-faith effort to comply with statutory definition of such report); *id.* § 74.351(r)(6) (Vernon Supp. 2008) (defining "expert report"). Finally, as did several other defendants, appellants objected to the Poland parties' live petition to the extent that it attempted to recast health-care-liability claims as other causes of action, and they moved to dismiss those claims, as well, under section 74.351(b). Appellants sought attorney's fees under section 74.351(b). *See id.* § 74.351(b)(1) (requiring trial court to award attorney's fees to defendant who prevails on dismissal motion based on failure to serve expert report timely).

The Poland parties responded to appellants' section 74.351(b) dismissal motion. That response is not in the record, but we know from appellants' reply to it and from the parties' appellate briefing that the Poland parties did not deny that they had served the report of their expert, Dr. Den-

---

3. *See* TEX. BUS. & COM.CODE ANN. §§ 17.41–.63 (Vernon 2002 & Supp.2008).

nis Moritz,[4] on appellants' counsel 123 days after the filing of the original and first amended petition; instead, the Poland parties asserted that Dr. Moritz's May 2, 2005 expert report was timely because it had been "served" on appellants in early May 2005, well before suit was filed, by their having faxed it to appellants' counsel, along with Dr. Moritz's *curriculum vitae*, despite the report's not having referenced section 74.351. Appellants replied that the Poland parties' provision of an expert report before the filing of the health-care-liability claims against them did not meet former section 74.351(a)'s requirements. Appellants again requested attorney's fees.

On July 14, 2006, the trial court heard appellants' motion to dismiss for untimely service and their objections to the Poland parties' live petition. Other defendants' motions to dismiss, objections to the expert report, and motions to strike the live petition were heard simultaneously. No additional evidence was presented at the hearing. Some time after this hearing, the trial court verbally ruled that it would deny appellants' motion to dismiss for untimely service; for this reason, on September 8, 2006, the trial court heard appellants' objections to the expert report's sufficiency. As before, no additional evidence was presented at this second hearing.

On October 30, 2006, the trial court rendered an interlocutory order that, among doing other things, denied appellants' motion to dismiss the health-care-liability claims against them for lack of timely service and also denied their objection to the report's sufficiency:

> On July 14, 2006 . . . CAME TO BE HEARD all parties, by and through counsel, . . . St. Luke's Episcopal Hospital's and [the] Texas Heart Institute's Objections to Plaintiff's Chapter 74, Section 74.351 Expert Report and Motion to Dismiss Pursuant to Chapter 74, Section 74.351. . . . The Court, having considered such Motions and Objections, having reviewed the file herein, and heard the argument of counsel, makes the following FINDINGS OF FACTS and ORDERS:
>
> 1. Plaintiffs . . . filed their Original Petition on October 24, 2005. The 120–day deadline by which Plaintiffs were required to serve their expert reports pursuant to Section 74.351 of the TEX. CIV. PRAC. & REM.CODE was February 21, 2006. The earliest date that Plaintiffs served an expert report to any Defendant, after the filing of their lawsuit, was on February 24, 2006.
>
> . . .
>
> 2. With respect to Defendants, St. Luke's Episcopal Hospital and [the] Texas Heart Institute, on May 6, 2005, prior to filing suit, counsel for Plaintiff, Raymon Poland, mailed counsel for these Defendants an unsigned report from Dennis Moritz, M.D. dated May 2, 2005. The cover letter attaching the report did not specify that the report was being provided in accordance with the provi-

---

**4.** Dr. Moritz's unsigned report, dated May 2, 2005, was provided to appellants in May 2005, before suit was filed. In May 2006, more than half a year after suit had been filed, the Poland parties served appellants' counsel a second unsigned report of Dr. Moritz, dated May 19, 2006, along with a May 2006 report of a nurse, Rachel Cartwright.

The trial court struck the May 19, 2006 expert report of Dr. Moritz and the May 2006 expert report of Cartwright for their having been untimely served. Because the only report of significance to our discussion is the May 2, 2005 expert report of Dr. Moritz, we refer only to that report in our discussion.

sions of Chapter 74 of the Texas Civil Practice and Remedies Code. As Plaintiff, Raymon Poland, provided an expert report to Defendants, St. Luke's Episcopal Hospital and [the] Texas Heart Institute, before suit was filed, the Court finds that [plaintiffs-appellees] *TIMELY* served the Chapter 74, Section 74.351 report as to Defendants, St. Luke's Episcopal Hospital and [the] Texas Heart Institute.

. . .

4. With further respect to Defendants, St. Luke's Episcopal Hospital's and [the] Texas Heart Institutes' [*sic*] Objections to Plaintiffs' Chapter 74, Section 74.351 Expert Report as insufficient, the court further finds that [plaintiffs-appellees'] expert report of Dennis Moritz, M.D. dated May 6, 2005 is *SUFFICIENT* and Defendants, St. Luke's Episcopal Hospital's and [the] Texas Heart Institutes' [sic] Motion to Dismiss Pursuant to Chapter 74, Section 74.351 of the Texas Civil Practice and Remedies Code is *DENIED.*

(Emphasis in original.) The record contains no express ruling on appellants' objections to the Poland parties' live petition based on the assertion that the petition recast health-care-liability claims as other causes of action. This same order also granted the dismissal motions of Dr. Ott and of Dr. Grigore and Dr. Arthur S. Keats & Associates under section 74.351(b). Finally, the trial court signed a separate interlocutory order, also dated October 30, 2006, that granted Dr. Willerson's motion to dismiss based upon Texas Civil Practice and Remedies Code section 101.106(f). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(f) (Vernon 2005).

Appellants appealed the denial of their motion to dismiss, and the Poland parties appealed the adverse rulings dismissing all of their claims against Dr. Ott, Dr. Willerson, and Dr. Grigore and Dr. Arthur S. Keats & Associates—all under the same appellate cause number. Although the interlocutory order appealed by appellants was permitted by statute, this was not true of every appealed order. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a) (Vernon Supp.2008). On December 18, 2006, this Court, upon the parties' motion, abated the appeal and remanded the cause for the trial court—upon various parties' motions, filed in the trial court after appeal, to sever the interlocutory orders rendered in favor of Drs. Ott, Willerson, and Grigore and Dr. Arthur S. Keats & Associates—to render final and appealable those interlocutory rulings that had not been appealable on an interlocutory basis. Upon remand, the trial court severed the rulings against the specified defendants from the underlying cause, rendering a final judgment in the newly severed cause numbers involving Dr. Ott, Dr. Willerson, and Dr. Grigore and Dr. Arthur S. Keats & Associates. On March 15, 2007, this Court reinstated the appeal, assigning different appellate cause numbers to the appeal of what had by then become four separate rulings in four separate trial-court cause numbers. This opinion and judgment concern appellants' appeal of the interlocutory order denying their motion to dismiss.

### Service on Appellants

Under their first issue, appellants argue that the provision of an expert report to a physician or health-care provider before a court claim is filed against that individual or entity does not comply with former section 74.351(a). The Poland parties respond that former section 74.351(a) can be

satisfied by provision of an expert's report before a claim has been asserted against that person or entity in a lawsuit, so that the same report need not be served again within 120 days of the claim's filing against that defendant.

Former section 74.351(a) provides as follows concerning service of the expert report and *curriculum vitae:*

§ 74.351. **Expert Report**

(a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

*See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, *amended by* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a)). The section continues:

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

(1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court in-

curred by the physician or health care provider; and

(2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b).

■ This Court has recently held that "[t]he plain language of former section 74.351(a) and [Texas Rule of Civil Procedure] 21a, which it implicitly incorporates by use of the term 'serve,' simply does not contemplate 'service' of the expert's report and [*curriculum vitae* ] on a physician or health-care provider until after a claim has been filed in court against that person or entity." *Poland v. Ott,* 278 S.W.3d 39, 47–48 (Tex.App.-Houston [1st Dist.] 2008, no pet. h.). Accordingly, the provision of an expert report to a physician or health-care provider before a claim is filed against that individual or entity in court does not comply with former section 74.351(a)'s service requirement; instead, the 120–day period in which an expert report must be served is triggered under former section 74.351(a) by the filing of a health-care-liability claim against that person or entity. *See id.*

Because the Poland parties did not serve their expert's report within the 120–day period following their assertion of a health-care-liability claim against appellants, the trial court had no discretion to do anything except to dismiss the health-care-liability claims against these two defendants with prejudice. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b)(2) (providing that trial court "shall dismiss[ ] the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim"). Accordingly, we hold that the trial court erred in denying appellants' motion to dismiss that was based on section 74.351(b).[5]

5. At oral argument, the Poland parties relied       on *Puls v. Columbia Hosp. at Med. City Dallas*

Given our disposition of appellants' first issue, we need not reach their second issue, which asserts that, if timely, the expert report was substantively deficient.

## Disposition

We reverse that portion of the October 30, 2006 interlocutory order that denied the motion, asserted under section 74.351(b), to dismiss the health-care-liability claims alleged against appellants. We affirm the order except as herein reversed.[6] We remand the cause with instructions for the trial court to render an order granting appellants' dismissal motion and dismissing with prejudice all health-care-liability claims against appellants. *See id.* We remand the cause with instructions, rather than rendering a judgment of dismissal with prejudice, because of other matters that the trial court must address upon remand.

For example, in their dismissal motion, appellants requested attorney's fees, which the trial court did not award because of its disposition. Because the trial court will grant appellants' section 74.351(b) dismiss-

al motion upon remand, the trial court must also award these parties "reasonable attorney's fees and costs of court incurred by" them. *See id.* § 74.351(b)(1). Upon remand, the trial court must determine the amount of attorney's fees and their reasonableness, matters that it did not reach before. *See id.*

Additionally, section 74.351 applies only to health-care-liability claims. *See id.* § 74.351. The Poland parties' live petition alleged not only health-care-liability claims, but also alleged intentional torts, violations of the DTPA and of Texas Penal Code provisions, conspiracy to commit various matters, and breaches of fiduciary duty. Still pending before the trial court is appellants' objection to the live petition of the Poland parties, asserting that the Poland parties had improperly recast what were simply health-care-liability claims as other causes of action. The scope of the trial court's dismissal under section 74.351(b) will necessarily be determined by its disposition of these objections that appellants raised to the petition's allegations.

*Subsidiary, L.P.,* which we distinguish. *See* 92 S.W.3d 613 (Tex.App.-Dallas 2002, pet. denied). In *Puls,* the plaintiff filed a claim based on a perfusionist's negligence, for which it alleged that the hospital-employer was vicariously liable, in its original petition; in an amended petition, the plaintiff added claims based on nurses' negligence, for which it also alleged that the hospital-employer was vicariously liable. *See id.* at 615. The plaintiff served an expert report concerning the nurses' negligence within 180 days of the amended petition's filing (the deadline at that time), but more than 180 days from the original petition's filing. *See id.* The perfusionist was nonsuited. *See id.* The *Puls* court rejected the hospital's contention that the expert report concerning the nurses' actions was untimely because it had been served more than 180 days from the filing of the original petition, in which the hospital had first been made a party through vicarious liability for another employee's actions: the claim against

it for vicarious liability based on the nurses' actions was a new "claim." *See id.* at 617–18. *Puls* does not control in this case because, in *Puls,* the expert report concerning the nurses was served on the hospital-employer *after* the claim based on the actions of its nurse-employees had been alleged in an amended petition. Here, in contrast, the report was provided to appellants before *any* health-care-liability claim, based on any of appellants' employees' actions, was filed against appellants in a lawsuit.

6. The provisions of the trial court's interlocutory order other than those addressed in this opinion contain findings and rulings that concern defendants who were severed from the trial court cause number (2006–38894) to which this appeal relates. Accordingly, the portions of the interlocutory order that we affirm are those that do not relate to appellants.

■ In their rehearing motion, appellants for the first time ask this Court to adjudicate the issue of whether, in their third amended petition, the Poland parties had improperly recast health-care-liability claims as other causes of action. Appellants acknowledge in their motion for rehearing that the trial court "never had a reason to reach the issue of whether the [third amended petition's] claims were 'health care liability claims,'" given the trial court's having "determined the report was legally sufficient" and timely. We decline to do so. In their rehearing motion, appellants devote 13 pages to briefing whether the third amended petition's additional claims were actually improperly recast health-care-liability claims, whether we may reach that determination for the first time on appeal because it involves a question of law, whether rendition is thus appropriate on appeal, whether the interests of judicial economy support our reaching the issue, and, alternatively, whether we can and should abate the appeal for the trial court to rule on the issue. Appellants devoted a similar amount of briefing (10 pages of a 13–page motion) in the trial court to the issue of whether the third amended petition's additional claims were actually improperly recast health-care-liability claims that should also be dismissed.

Nonetheless, in their opening and reply briefs, appellants failed to brief the issues that they now raise on rehearing.[7] These were not matters that could have been known only after our opinion issued: rather, because appellants briefed the issues thoroughly below, they could have addressed those matters on original submission. We normally do not address matters raised for the first time in a party's rehearing motion when those same matters could have been raised in a party's opening briefs, but were not. *See Malcomson Rd. Util. Dist. v. Newsom*, 171 S.W.3d 257, 279 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (op. on reh'g) (declining to reach challenge that was raised for first time on rehearing, when it could have been raised in opening brief, but was not); *McGuire v. Fed. Deposit Ins. Corp.*, 561 S.W.2d 213, 216 (Tex.Civ.App.-Houston [1st Dist.] 1977, no writ) (op. on reh'g) (holding that party generally may not raise for first time on rehearing new matters that could have been raised earlier); *Trice Prod. Co. v. Dutton Drilling Co.*, 333 S.W.2d 607, 617 (Tex.Civ.App.-Houston 1960, writ ref'd n.r.e.) (op. on reh'g) (same).

The cause must already be remanded for the determination of attorney's fees. Under the circumstances set out above, we decline to reach the matters raised in appellants' rehearing motion. Upon remand,

---

7. In their opening brief, appellants made only cursory references possibly alluding to the issues now raised on rehearing: (1) in four places in their argument, by one sentence in each place, they stated that the trial court abused its discretion in not dismissing the "case," the "suit," or the "lawsuit" and (2) they asserted, in one sentence of the summary of their argument, that "[t]he trial court committed reversible error in failing to dismiss this lawsuit for the additional reason that the report was legally insufficient." There was no briefing or analysis on why the entire lawsuit should have been dismissed, and their prayer requested only a reversal, without specifying whether a remand or a rendition was sought. In their reply brief, appellants made two possible allusions to this matter: (1) in the introductory paragraph, they asserted that "[t]his Court should reverse and render judgment dismissing with prejudice all claims" against them and (2) in the prayer, they requested that we "render judgment dismissing with prejudice all claims." Again, there was no briefing regarding why we should render a judgment of dismissal as to all of the claims in the lawsuit, rather than only the health-care-liability claims, nor any argument, authorities, or analysis contending that the third amended petition's other claims are actually health-care-liability claims.

the trial court will consider appellant's August 16, 2006 motion objecting to the third amended petition's new claims and seeking their dismissal and will determine which claims are health-care-liability claims that must also be dismissed under the law adopted by today's opinion.

Appellants moved for rehearing to the panel. Appellees moved for rehearing to the panel and for en banc reconsideration to the Court.

The panel denied appellees' motion for rehearing addressed to it, leaving pending appellants' motion for rehearing and appellees' motion for en banc reconsideration and extending the Court's plenary power over the case.

The Court granted appellants' motion for rehearing and withdrew its opinion and judgment issued February 14, 2008, thus rendering moot appellees' motion for en banc reconsideration. *See Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 41 n. 4 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (op. on reh'g).

After the Court withdrew its February 14, 2008 opinion and judgment, during the pendency of the Court's plenary power over the case, and before another opinion and judgment had issued in the case, en banc consideration was requested from within the Court.

Chief Justice RADACK and Justices TAFT, JENNINGS, KEYES, ALCALA, HANKS, HIGLEY, and BLAND participated in the vote to determine en banc consideration.

A majority of the Justices of the Court voted to deny en banc consideration.

Justice TAFT, concurring in the denial of en banc consideration.

Justice JENNINGS, joined by Justice BLAND, dissenting from the denial of en banc consideration.

TIM TAFT, Justice, concurring in the denial of en banc consideration.

For the reasons set out in my opinion concurring in the denial of en banc consideration in *Poland v. Ott*, 278 S.W.3d 39, 53–54 (Tex.App.-Houston [1st Dist.] 2008, no pet. h.) (Taft, J., concurring), I concur in the decision of the Court to deny en banc consideration in this case.

TERRY JENNINGS, Justice, dissenting from the denial of en banc reconsideration.

In its opinion, the panel erroneously concludes that appellees, Raymon Poland, individually and as independent administrator of the estate of Jessie Poland, Robert Martin, and Frank Martin ("the Polands"), untimely served their medical liability expert report on the attorneys of appellants, St. Luke's Episcopal Hospital ("St. Luke's") and The Texas Heart Institute ("THI"). *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 [hereinafter "former section 74.351(a)"] (amended 2005) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp. 2008)).

In fact, as expressly found by the trial court, the Polands had already served their expert's report on the attorneys for St. Luke's and THI prior to the Polands' filing of their health care liability lawsuit.

Regardless, the panel reasons that because the Polands did not, after filing their health care liability claims in court, serve yet another copy of the report to the attorneys, who already had the report in their possession, the Polands' claims for the wrongful death of Mrs. Poland must be dismissed with prejudice, and the Polands

must pay the attorneys' fees of St. Luke's and THI. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b) (Vernon Supp.2008). In doing so, the panel misinterprets the plain language of former section 74.351(a), disregards the legislative purposes of the statute, disregards the fundamental purpose of rule 21a, and misapplies the rule, resulting in a serious error, requiring en banc reconsideration of the case. *See* Tex.R.App. P. 41.2(c).

### Factual and Procedural Background

The pertinent facts of the case are straight forward and undisputed. St. Luke's, on August 11, 2003, admitted Mrs. Poland for elective mitral valve[1] replacement surgery. Although Mrs. Poland had been taking Coumadin for mitral valve regurgitation, she stopped taking Coumadin on August 9, 2003 in preparation for the surgery. Due to bleeding complications that occurred during the surgery, Mrs. Poland was twice taken back into surgery, and she died on August 20, 2003 as a result of the complications.

Thereafter, the Polands' attorneys complied with the notice provision of chapter 74 of the Texas Civil Practice and Remedies Code.[2] Having been in contact with the attorneys for St. Luke's and THI, the Polands' attorneys, by a letter faxed on May 6, 2005, informed the St. Luke's and THI attorneys that they had "several issues that we wish to address with you and risk management prior to filing suit." They attached to their letter the May 2, 2005 "medical evaluation of *our expert wit-*

*ness,* Dr. Dennis Moritz, MD," a Board Certified Cardiac Surgeon. (Emphasis added.) Attached to Dr. Moritz's report was his lengthy curriculum vitae.

In sum, Dr. Moritz, in his expert report, stated that the pertinent standard of care in regard to surgery on a patient on Coumadin "is to stop the Coumadin and allow the coagulation profile to return to normal." He also stated, "Performing any elective surgery on a fully anticoagulated patient is a breach of the standard of care. This is particularly true for operations such as heart surgery in which bleeding is always a potential hazard." Dr. Moritz noted that it "is essential to check the [Prothrombin Time ("PT") and International Normalized Ratio ("INR") ] before surgery and defer surgery until it returns to near normal," and that Mrs. Poland's PT/INR "was not only elevated, but was well above the therapeutic range at the time of admission." He emphasized that "[t]he dangerous [PT/INR] level was confirmed . . . , but the operation proceeded nonetheless." He concluded,

> It is my opinion based on a reasonable degree of medical probability that proceeding with this operation in a patient who was fully anticoagulated with Coumadin led to bleeding, multiple transfusions of blood products, multiple organ failure, and finally death.

> The principle of not doing elective surgery on a fully anticoagulated patient is so basic to surgical principles, that I feel this breach of the standard of care must also reflect a serious system failure at

---

1. The mitral valve is "[a] valve of the heart, composed of two triangular flaps, that is located between the left atrium and left ventricle and regulates blood flow between these chambers." The American Heritage Medical Dictionary 523 (2d ed.2002).

2. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.051(a) (Vernon 2005) ("Any person or

his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit in any court of this state based upon a health care liability claim. . . .").

this hospital. Many people had knowledge, or should have had knowledge of Mrs. Poland's PT/INR. Any of these could have and should have initiated action to cancel the case. This failure resulted in Mrs. Poland's death.

After receiving Dr. Moritz's expert report, the attorneys for St. Luke's and THI, by letter dated May 19, 2005, responded that they would agree to "a pre-suit settlement conference ... contingent on the participation of the other healthcare providers implicated in Dr. Dennis Moritz's report."[3]

On October 24, 2005, the Polands filed their original petition, alleging, as noted by the panel,

> that, at the time of surgery, [Mrs.] Poland's blood contained a level of Coumadin that the health-care providers should have known rendered her blood fully anti-coagulated and, thus, rendered surgery dangerous. The surgery was nonetheless performed; Jessie Poland bled internally; and she died several days later of multi-system organ failure.

*St. Luke's Episcopal Hosp. v. Poland,* No. 01–06–01038–CV, 288 S.W.3d at 40, (Tex. App.-Houston [1st Dist.] Feb. 6, 2009, no pet. h.).

Subsequently, St. Luke's and THI moved to dismiss the Polands' health care liability claims on the grounds that the Polands had failed to timely serve them with Dr. Moritz's expert report and that Dr. Moritz's expert report is "legally insufficient." *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005); Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b). Concluding that the Polands had in fact timely served St. Luke's and THI with Dr. Moritz's expert report and that the report is sufficient, the trial court entered its October 30, 2006 interlocutory order denying St. Luke's and THI's motion to dismiss the Polands' health care liability claims.

## Section 74.351(a)

In their first issue, St. Luke's and THI argue that the trial court erred in denying their motion to dismiss the Polands' health care liability claims because, under former section 74.351(a), "an expert report must be *served* within 120–days *after filing a lawsuit* asserting a health care liability claim." (Emphasis added.) St. Luke's and THI do not claim that their attorneys did not actually receive the report. Rather, they assert,

> *What is in dispute is when the Polands could first "serve" their report* within the meaning of section 74.351(a). Under section 74.351(a), there should be no doubt the Polands *had to serve their expert report between the time they filed their lawsuit on October 24, 2005 and the deadline of February 21, 2006.* ... Despite the statute's *plain language,* the Polands contend their letter from Dr. Moritz satisfied their statutory burden even though it was sent long before suit was filed and was in relation to a possible pre-suit settlement conference.

(Emphasis added.) The panel agrees, holding,

> [T]he *plain language* of former section 74.351(a) and [Texas Rule of Civil Procedure] 21a, which it implicitly incorporates by use of the term 'serve' simply does not contemplate 'service' of the expert's report and [*curriculum vitae* ] on a physician or health-care provider *until after a claim has been filed* in court against that person or entity.... Accordingly, the provision of an expert report to a physician or health-care provider before a claim is filed against that

---

3. On appeal, St. Luke's and THI characterize the report as a "letter."

individual or entity in court does not comply with former section 74.351(a)'s service requirement; instead, the 120–day period in which an expert report must be served *is triggered under former section 74.351(a) by the filing of a health-care-liability claim* against that person or entity.

*St. Luke's Episcopal Hosp.*, 288 S.W.3d at 44 (emphasis added) (citations omitted).

The panel's erroneous holding and reasoning is based on its recent holding in *Poland v. Ott*, 278 S.W.3d 39 (Tex.App.-Houston [1st Dist.] 2008, no pet. h.), which was based on another panel's holding in *University of Texas Health Science Center*

**4.** In reaching this holding, the panel in *University of Texas Health Science Center at Houston v. Gutierrez* relied in large part on *Herrera v. Seton Northwest Hospital*, 212 S.W.3d 452, 459 (Tex.App.-Austin 2006, no pet.). *Univ. of Tex. Health Science Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 872–73 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). Unfortunately, the reliance upon *Herrera,* which is substantively distinguishable, by both the panel in *Gutierrez* and the panel here is misplaced.

In *Herrera,* Herrera's attorneys claimed that they had timely sent, by regular mail, a copy of Herrera's medical liability expert report to the defendant doctor and hospital. *Herrera,* 212 S.W.3d at 456. Significantly, both the doctor and the hospital alleged that they did not receive the report until Herrera's attorneys subsequently sent the report, outside of section 74.351(a)'s deadline, the report by facsimile transmission. *Id.* Herrera argued that under the "mailbox rule" in Texas Rule of Civil Procedure 5, he "constructively delivered" the report to the defendants when he placed it into the control of the United States Postal Service. *Id.* The Austin Court of Appeals concluded that Herrera's reliance upon rule 5 was misplaced because it concerns the filing of documents with a court clerk, not service on a party. *Id.* at 458 (citing TEX.R. CIV. P. 5). The court also concluded that the Legislature intended for health care liability claimants to comply with rule 21a "to fulfill the requirements of section 74.351(a)." *Id.*

*at Houston v. Gutierrez,* 237 S.W.3d 869, 873 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). In *Gutierrez,* this Court held that:

Given the express legislative intent of Chapter 74 and the intentional legislative act of replacing the word "furnish" with "serve" in section 74.351(a), we determine that *proper service under rule 21a must occur* to effectuate the intent of Chapter 74 as a whole, and section 74.351(a) specifically.[4]

*Id.* (emphasis added). In *Ott,* the panel conceded:

We reach this conclusion despite the fact that, as the [Polands] note, the section

at 459. However, in doing so, the court noted that a "party who accomplishes service under rule 21a is entitled to a presumption of delivery":

A certificate by a party or an attorney of record, or the return of the officer, or the affidavit of any other person showing service of a notice *shall be prima facie evidence of the fact of service.*

*Id.* (quoting TEX R. CIV. P. 21a) (emphasis added).

The Austin Court of Appeals did not hold, as did this Court in *Gutierrez,* that proper service under rule 21a *"must occur* to effectuate the intent of Chapter 74 as a whole, and section 74.351 specifically," even if the defendant health care provider has admitted to actually having received an expert report. *See Gutierrez,* 237 S.W.3d at 873 (emphasis added). Rather, the Austin Court of Appeals merely held that Herrera "was not entitled to any presumption of delivery." *Herrera,* 212 S.W.3d at 460. It noted that section 74.351(a) "contemplates service to parties consistent with the rules of civil procedure" and that Herrera did not "use any method of service authorized by rule 21a to deliver copies of his expert report and *curriculum vitae....* " *Id.* Thus, the Austin Court of Appeals concluded that "Herrera [had] failed to prove compliance with the statutory deadline." *Id.* Given that the defendant doctor and hospital actually denied receiving the report mailed by Herrera's attorneys, the court's conclusion makes sense.

requires service *"not later than"* 120 days after a claim is filed, *rather than requiring service within 120 days after the claim is filed.*

*Ott,* 278 S.W.3d at 48 (emphasis added).

Although St. Luke's and THI and the panel state that the "plain language" of former section 74.351(a) actually requires that a medical liability expert report be served only after the filing of a lawsuit asserting a health care liability claim, nothing in the plain language of the statute so states. Former section 74.351(a) provides,

> In a health care liability claim, a claimant shall, *not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney* one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties.

*See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005). Thus, as conceded by the panel in *Ott,* former section 74.351(a) actually requires service " *'not later than'* 120 days after a claim is filed," not *"within 120 days* after the claim is filed." *Ott,* 278 S.W.3d at 48 (emphasis added).

The Texas Supreme Court has explained,

> When interpreting statutes, we try to give effect to legislative intent. "Legislative intent remains the polestar of statutory construction." However, it is cardinal law in Texas that a court construes a statute, "first by looking to the plain and common meaning of the statute's words." If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation sup-

ported by the plain meaning of the provision's words and terms. Further, if a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create an ambiguity.

*Fitzgerald v. Advanced Spine Fixation, Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex. 1999) (footnotes omitted).

Here and in *Ott,* the panel has turned to Texas Rule of Civil Procedure 21a and created such an ambiguity. *See* TEX.R. CIV. P. 21a. Rather than focus on the plain and common meaning of the word "serve," the panel reasons that former section 74.351(a) "implicitly incorporates" rule 21a, which does not, in the words of the panel, "contemplate 'service' " of any pleading, plea, motion, or other form of request required to be served under rule 21 until after a claim has been filed in a court. *St. Luke's Episcopal Hosp.,* 288 S.W.3d at 49. Thus, the panel, in *Ott,* concluded that delivery of an expert report to a defendant physician or health care provider "before a health-care liability claim is filed in court against the physician or health care provider does not meet former section 74.351(a)'s service requirements." *Ott,* 278 S.W.3d at 46.

The word "serve," as a verb, is simply defined as to "make legal delivery of (a notice or process)" and to "present (a person) with a notice or process as required by law." BLACK'S LAW DICTIONARY 1372 (7th ed.1999). Thus, all that former section 74.351(a) requires is that a health care liability claimant "deliver" or "present" each party or the party's attorney with an expert report and curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted by the hard-and-fast deadline. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005). Only if a defendant physician or health care

provider "has not been served" with an expert report by the deadline, "shall" a trial court then order the claim dismissed with prejudice and award attorney's fees and costs to the pertinent defendants. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b).

Rule 21a does not define the word "serve," which, as noted above, simply means to "deliver"; rather, it provides:

> Every notice required by these rules, and every pleading, plea, motion or other form of request required to be served under Rule 21, other than the citation to be served by the filing of a cause of action and except as otherwise expressly provided in these rules, *may be served by delivering a copy to the party to be served, or the party's duly authorized agent or attorney of record,* as the case may be, either [1] in person or by agent or by courier receipted delivery or [2] by certified or registered mail, to the party's last known address, or [3] by telephonic document transfer to the recipient's current telecopier number, or [4] by such other manner as the court in its discretion may direct.

TEX.R. CIV. P. 21a (emphasis added). The plain purpose of rule 21a is to ensure that parties receive, by delivery, "notice" and "every pleading, plea, motion or other form of request required to be served under Rule 21." *See* TEX.R. CIV. P. 21a. It clearly gives trial courts discretion to direct other methods of delivery. TEX.R. CIV. P. 21a. More importantly, as explained by the Fort Worth Court of Appeals:

> The purpose of the rules relating to service and notice is to make reasonably certain that all parties to a suit are notified as to the date and time the court has set their matter down for hearing and determination. This is in order that the parties, individually or by counsel may appear, and present their side of the case and to take such action as is deemed appropriate to protect their interest. Thus, *service and notice in a technical sense is incidental where the main purpose of obtaining the appearance of all parties and their participation is accomplished.*

*Hill v. W.E. Brittain, Inc.,* 405 S.W.2d 803, 807 (Tex.App.-Fort Worth 1966, no writ) (emphasis added).

In *Hill,* although the Hills did not deny that they were actually "served with" a copy of a motion for judgment notwithstanding the verdict and notice of a hearing on the motion, they complained because it was not sent to them "by registered mail as provided by Rule 21a." *Id.* The court concluded that "prima facie evidence of service" and the appearance and participation of the Hills at the hearing demonstrated that the Brittain's notice by mail was adequate. *Id.* The court explained that the Hills "were in no way prejudiced." *Id.* Moreover, the Hills made "no showing that they were denied any rights or privileges or that had service been proper, assuming it was not, that a different result would have obtained." *Id.* In sum, nothing suggested that the Hills "could or would have made a better showing or presented a stronger case had they received notice by registered or certified mail rather than by regular mail." *Id.*

Likewise, in *Ott,* although Dr. Ott complained that neither he nor his attorneys received the Polands' expert report directly from the Polands after they had filed their lawsuit, Dr. Ott made no showing of any prejudice. The Polands' service of the expert report upon Dr. Ott's insurance carrier prior to the filing of their lawsuit, as requested by the insurance carrier, was adequate. *Ott,* 278 S.W.3d at 60 (Jennings, J. dissenting).

Here, unlike in *Ott,* the Polands' attorneys, having been in contact with the attorneys for St. Luke's and THI, by a letter faxed on May 6, 2005, informed the St. Luke's and THI attorneys that they had "several issues that we wish to address with you and risk management prior to filing suit" and attached to their letter the May 2, 2005 "medical evaluation of *our expert witness,* Dr. Dennis Moritz, MD," a Board Certified Cardiac Surgeon. After actually receiving Dr. Moritz's expert report, the attorneys for St. Luke's and THI, by letter dated May 19, 2005, responded that they would agree to "a pre-suit settlement conference ... contingent on the participation of the other healthcare providers implicated in Dr. Dennis Moritz's report." Thus, there is no doubt at all that the attorney's for St. Luke's and THI had in fact received Dr. Moritz's report. St. Luke's and THI simply cannot claim any prejudice under these circumstances, and the Polands' service of the expert report directly upon counsel for St. Luke's and THI was more than adequate.

Relying on rule 21a to fault the Polands for not serving yet another copy of their expert report on the St. Luke's and THI attorneys after filing suit not only results in a miscarriage of justice, but actually goes against the very purpose of our rules of civil procedure upon which the panel relies to reach its holding. We are to "liberally" construe the rules because "[t]he proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established rules of substantive law." Tex.R. Civ. P. 1. The general commentary to rule 1 expressly warns:

> Any procedural device or rule therefore, which impedes the investigation or the evaluation of the facts or the awarding of the just consequences thereon, is incompatible with an ideal procedure. No mere rule of procedural form or courtesy should be allowed to delay or control the disposition of the litigation upon its merits.

> No judgment should ever be rendered in the trial court which is based upon mere procedural technicalities.... There is no vested right in rules of procedure; much less is there any vested right in procedural errors.

Tex.R. Civ. P. 1—General Commentary—1966 (Vernon 2003). This is especially true when litigants like St. Luke's and THI have not been prejudiced by their attorneys' receipt of the expert report pre-suit.

Nothing in former section 74.351(a) precludes a claimant from serving an implicated physician or health care provider with her expert report and curriculum vitae along with an original petition or prior to the actual filing of such a claim in court in an effort to reach a settlement. When a claimant serves her expert report on an implicated physician or health care provider along with the filing of her health care liability claims or prior to the filing of those claims in court, then a defendant can, as did St. Luke's and THI here, object to the report after suit is filed. Here, regardless, the plain language of former section 74.351(a) simply does not render untimely the Polands' delivery of their expert's report on the attorneys of St. Luke's and THI. It certainly does not evidence a legislative intent that a claimant's failure to serve yet another copy of the same expert report on the same opposing counsel after the filing of a lawsuit requires that the trial court dismiss the lawsuit.

The purpose behind the Legislature's requirement of "early expert reports" is not to create a "gotcha"; it is to "stem frivolous suits against health care providers." *Lewis v. Funderburk,* 253 S.W.3d

204, 205 (Tex.2008). As recently noted by our sister court, in enacting Chapter 74, the Legislature sought to " '(1) reduce excessive frequency and severity of health care liability claims through reasonable improvements and modifications in Texas insurance, tort, and medical practice systems;' and '(2) decrease the cost of those claims and ensure that awards are rationally related to actual damages.' " *Mokkala v. Mead,* 178 S.W.3d 66, 74 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (quoting Act of June 2, 2003, 78th Leg., R.S. ch. 204, § 10.11(b), 2003 Tex. Gen. Laws 847, 884). In presenting House Bill 4, which included the pertinent language in section 74.351, Representative Joe Nixon, Chair of the House Committee on Civil Practices, explained,

> House Bill 4 . . . is designed to *promote fairness and efficiency* in civil lawsuits, *protect Texas citizens and Texas courts from abusive litigation tactics,* remove incentives in the system that are causing unwarranted delay and expense. House Bill 4—its purpose is to restore the needed balance in our court system so that it can operate more efficiently and more fairly and less costly.

*Id.* (citing *Hearings on Tex. H.B. 4 Before the House Comm. on Civil Practices,* 78th Leg., R.S. 1 (Feb. 26, 2003) (statement of Rep. Nixon) (transcript available from Capitol Research Services, Austin, Texas)) (emphasis added). Representative Nixon emphasized that "the hard reality is we just need to make a *hard and fast deadline, like we do on statue [sic] of limitations*—as we do on other requirements." *Id.* (citing Debate on Tex. H.B. 4 on the Floor of the House, 78th Leg., R.S. 317 (March 19, 2003) (statement of Rep. Nixon) (transcript available from Capitol Research Services, Austin, Texas)) (emphasis added).

Here, not only did the Polands meet former section 74.351(a)'s deadline, they, by providing the expert report of Dr. Moritz directly to the attorneys of St. Luke's and THI prior to filing their health care liability lawsuit, essentially placed all of their cards on the table to effectuate an early settlement of the case. As noted by the trial court when addressing the Polands' attorneys at the hearing on the motion to dismiss:

> What I will do is I will issue an order one way or the other. . . . Because this issue needs to be decided. Because lawyers usually don't do what you have done. And *I feel like plaintiffs were attempting to do what the statute attempts to require of them.* And usually the case is plaintiffs are trying to do the least, and defendants file a motion to dismiss in that situation.

(Emphasis added.)

Setting aside the trial court's express finding that the Polands had timely served their expert report on the St. Luke's and THI attorneys and then dismissing the Polands' claims with prejudice and making them pay the attorney's fees of St. Luke's and THI under these circumstances constitutes a misapplication of former section 74.351(a). In doing so, the panel misinterprets the plain language of the statute and goes against its purpose to stem frivolous lawsuits against health care providers while promoting fairness and efficiency in such lawsuits.

Certainly, a health care liability claimant's certification of compliance with rule 21a in delivering an expert report to a defendant doctor or health care provider would entitle the claimant to "a presumption of delivery" of the report. However, the bottom line is that the claimant need not rely on such "a presumption of delivery" after establishing that the defendants'

attorneys were actually served with the report.

Accordingly, this panel's statement in the instant case and in *Ott* that former section 74.351(a) implicitly incorporates the requirements of rule 21a and the panel's statement in *Gutierrez* that "proper service under rule 21a must occur to effectuate the intent of Chapter 74 as a whole, and section 74.351 specifically" are in serious error. *See St. Luke's Episcopal Hosp.*, 288 S.W.3d at 50; *Ott*, 278 S.W.3d at 57; *Gutierrez*, 237 S.W.3d at 873.

### Conclusion

In sum, the En Banc Court should hold, as did the trial court, that the Polands timely served St. Luke's and THI with the health care liability expert report of Dr. Moritz, overrule St. Luke's and THI's first issue, and address St. Luke's and THI's second issue. Moreover, the En Banc Court should overrule this Court's holdings in *Ott* and *Gutierrez* that "proper service under rule 21a must occur to effectuate the intent of Chapter 74 as a whole, and section 74.351 specifically." *Ott*, 278 S.W.3d at 57; *Gutierrez*, 237 S.W.3d at 873. Accordingly, I respectfully dissent from the denial of en banc consideration of this case.