# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-09-00292-CV

Janet Carroll, Appellant

v.

Dr. Juliette Humsi, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GN-09-000929, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

Janet Carroll appeals a district court judgment dismissing her health care liability claim against Dr. Juliette Humsi for failure to serve the expert report or reports required by section 74.351 of the Civil Practice and Remedies Code within 120 days after Carroll filed her "original petition." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b), (r)(6) (West 2005). Carroll contends that the district court abused its discretion in dismissing her claim because she timely served Humsi with an expert report meeting section 74.351's requirements. We will affirm the judgment of dismissal.

## BACKGROUND

This appeal arises from the same underlying facts described in this Court's recent decisions in *Hayes v. Carroll*, 314 S.W.3d 494 (Tex. App.—Austin 2010, no pet.), and *Carroll v. Donau*, No. 03-09-00293-CV, 2010 Tex. App. LEXIS 6063 (Tex. App.—Austin July 9, 2010,

pet. denied). On May 8, 2007, Carroll sued Seton Healthcare System, which operates Austin's Brackenridge Hospital, alleging that negligence by unnamed nurses, agents or employees of Seton while Carroll was being treated at Brackenridge in 2006 resulted in the loss of her right leg above the knee. Subsequently, on October 30, 2007, Carroll filed a first amended petition naming as defendants and asserting health care liability claims against six physicians—David Hayes, Robert Morrison, Maro Ohanian, Philip Ralidis, Jordan Weingarten, and appellee Humsi—and nine nurses. Carroll attached to her amended petition an expert report from Don Patman, M.D., who presented opinions that purported to implicate the physician defendants, as well as an expert report from a registered nurse that purported to implicate the nurse defendants.[1]

Although Carroll named Humsi as a defendant in the amended petition filed on October 30, 2007, Carroll did not serve Humsi with process until September 2008. Carroll simultaneously served Humsi with a copy of the amended petition as well as an amended version of Dr. Patman's report. This amended version of Patman's report, dated January 2008, is the same one that this Court later analyzed in *Hayes*. *See* 314 S.W.3d at 502-09. Carroll attributes her delay in serving process on Humsi to that fact that Humsi had been a resident at Brackenridge when Carroll was treated, moved after her residency ended, and "had to be tracked down and served in Washington State at her new place of business." After being served with process, Humsi answered, filed objections to the sufficiency of Patman's report, then moved to dismiss Carroll's claim against her. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b). Humsi relied on three grounds for

---

[1] Carroll had previously served Seton with an earlier version of each report, which accompanied her original petition, as well as a July 2007 supplement to each report.

2

dismissal:  (1) Carroll had not served Humsi with Patman's report within 120 days after Carroll filed her first petition in the case (which, again, had named Seton as the sole defendant), (2) in the alternative, the report was untimely because it was served after the 120th day after Carroll filed her amended petition adding Humsi as a defendant, and (3) Patman's report failed to comply with chapter 74's requirements and thus constituted a failure to serve an "expert report."  Following a hearing, the district court granted Humsi's motion to dismiss without stating the grounds.[2]  Carroll appealed the judgment.

## ANALYSIS

We apply an "abuse-of-discretion" standard in reviewing a trial court's ruling on a motion to dismiss a health care liability claim under section 74.351 of the Civil Practice and Remedies Code.  *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006).  A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles.  *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).  Where, as here, there are no findings of fact or conclusions of law, a trial court's judgment dismissing a health care liability claim under section 74.351 will be upheld on any legal theory supported by the record, and any necessary findings of fact will be implied.  *Rosemond v. Al-Lahiq*, No. 09-830, 2011 Tex. LEXIS 69, at *6 (Tex. Jan. 21, 2011) (per curiam).  We defer to the trial court's factual

---

[2]  In the same order, the district court granted summary judgment dismissing Carroll's claims against the nurse defendants on election-of-remedies grounds under section 101.106 of the Civil Practice and Remedies Code.  These claims were severed, and Carroll separately appealed the judgment of dismissal in that cause.  We affirmed that judgment in *Carroll v. Donau*, No. 03-09-00293-CV, 2010 Tex. App. LEXIS 6063 (Tex. App.—Austin July 9, 2010, pet. denied).

3

determinations that are supported by the evidence but review questions of law de novo. *Stockton v. Offenbach*, No. 09-0446, 2011 Tex. LEXIS 128, at *10-11 (Tex. Feb. 25, 2011). Thus, to the extent that our analysis requires us to construe chapter 74—a question of law—we apply a de novo standard. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). "In construing a statute, our objective is to determine and give effect to the Legislature's intent," looking first to the plain and common meaning of the statute's words. *Id.* (citing *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002)); *see* Tex. Gov't Code Ann. § 311.023 (West 2005). We will read the statute as a whole, interpreting it to give effect to every part. *City of Boerne*, 111 S.W.3d at 25.

On appeal, Carroll argues that the district court would have abused its discretion in dismissing her claim against Humsi in reliance on any of the three grounds Humsi asserted in her motion. Humsi's first two grounds pertain to the "threshold issue" of whether Carroll timely served Humsi with Patman's report. *See Rosemond*, 2001 Tex. LEXIS 69, at *9. The third and final ground concerns the adequacy of Patman's report assuming it was timely served. *See id.*

Under section 74.351, subsection (a), a health care liability claimant

> shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). If the claimant fails to serve the required expert report or reports on a particular defendant within this period, that defendant may obtain both dismissal of the claim against him and attorney's fees. *See id.* § 74.351(b) ("If, as to a defendant

4

physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall . . . enter an order that: (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim."), (r)(1) ("'Affected parties' means the claimant and the physician or health care provider who are directly affected by an act or agreement required or permitted by this section and does not include other parties to an action who are not directly affected by that particular act or agreement.").

In her dismissal motion, Humsi first asserted that Carroll's service of Patman's report on her was untimely, such that the district court had no discretion but to dismiss Carroll's claim, because it occurred more than 120 days after Carroll filed her "original petition" in the case naming Seton as the sole defendant.[3] We rejected this identical argument in *Hayes*, holding that the "original petition" that triggers the 120-day period to serve expert reports with respect to a particular defendant is the first petition that asserts a health care liability claim against that defendant, not, as Humsi urges, the first petition filed in the case. *Hayes*, 314 S.W.3d at 502; *accord Davis v. Baker*, No. 03-10-00324-CV, 2010 Tex. App. LEXIS 10317, at *12 (Tex. App.—Austin, Dec. 22, 2010, no pet. h.); *Daybreak Cmnty. Servs. v. Cartrite*, 320 S.W.3d 865, 872 (Tex. App.—Amarillo 2010, no pet.); *Stroud v. Grubb*, No. 01-09-00945-CV, 2010 Tex. App. LEXIS 3675, at *13 (Tex. App.—Houston [1st Dist.] May 13, 2010, pet. denied); *Arizpe v. Wilcox*, No. 04-09-00408-CV, 2010 Tex. App.

---

[3] It is undisputed that there was no "written agreement" between Carroll and Humsi to extend Carroll's "date for serving the report." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West 2005).

LEXIS 3150, at *8-9 (Tex. App.—San Antonio Apr. 28, 2010, pet. denied) (mem. op.); *Padre Behavioral Health Sys., LLC v. Chaney*, 310 S.W.3d 78, 85 (Tex. App.—Corpus Christi 2010, no pet.); *Osonma v. Smith*, No. 04-08-00841-CV, 2009 Tex. App. LEXIS 4959, *1-2 (Tex. App.—San Antonio July 1, 2009, pet. denied) (mem. op.). Humsi suggests no reason why we should depart from that precedent here. Following *Hayes*, we hold that the district court would have abused its discretion if it had granted Humsi's dismissal motion on the ground that Carroll failed to serve her with Patman's report within 120 days after she filed her original petition against Seton.

In the alternative, Humsi contended that Carroll's service of Patman's report was untimely because it did not occur until more than 120 days after the date Carroll filed her amended petition adding Humsi as a defendant, the applicable trigger date under *Hayes*. Carroll filed her amended petition naming Humsi as a defendant on October 30, 2007. The 120th day after this date was February 27, 2008. Humsi has asserted that she was not served with the report until September 2008—almost seven months later—when she was contemporaneously served with the amended petition. For this reason, Humsi has argued, the district court had no discretion but to dismiss Carroll's claim against her.

Carroll argues that her service of the report on Humsi should be considered timely based on what is in essence a refinement of our holding in *Hayes*. She urges that section 74.351, subsection (a), contemplates that the 120-day period does not begin to run as to a particular defendant until (1) the first petition naming the defendant is filed, *and* (2) the defendant is served with process or otherwise is made a party to the action. Under the circumstances here, as Carroll observes, this would mean that the 120-day period would not have been triggered until

6

September 2008, when she finally served Humsi with process, and that she would have complied with the deadline by simultaneously serving Humsi with Patman's report. In support of her view, Carroll emphasizes that section 74.351, subsection (a), requires claimants to serve expert reports "on each *party* or the *party*'s attorney." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (emphases added). One is not a "party" to a lawsuit, Carroll observes, unless and until he or she is both named in a pleading *and* is either served, accepts or waives service, or makes an appearance. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex. 1991) (per curiam); *Ex parte Bowers*, 886 S.W.2d 346, 349 (Tex. App.—Houston [1st Dist.] 1994, writ dism'd w.o.j.); *accord Ross v. Nat'l Ctr. for the Employment of the Disabled*, 197 S.W.3d 795, 797-98 (Tex. 2006) (per curiam) ("[A] party who becomes aware of the proceedings without proper service of process has no duty to participate in them.") (citations and quotations omitted). From this, Carroll reasons that "[t]he only logical interpretation is that the 120-day period runs from the date the defendants were originally added to the suit and had a cause of action brought against them and were served with citation." "For the defendants in this case," Carroll explains, "that means 120 days from the day they were first named and sued in the First Amended Petition, October 30, 2007, at the earliest, with the actual deadline dependant on when a named defendant actually became a 'party.'"

Carroll is correct in observing that section 74.351, subsection (a), contemplates that a claimant cannot satisfy the expert-report requirement as to a physician or health care provider unless and until the physician or provider is also made a party: "a claimant shall . . . serve on each *party* or the *party*'s attorney one or more expert reports." This legislative intent is made further apparent by an additional requirement within subsection (a): "Each defendant physician or health

7

care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). We cannot conclude that the Legislature would have imposed this procedural requirement, at pain of waiver for non-compliance, unless it contemplated that a "defendant physician or health care provider" on whom a report is "served" so as to trigger the 21-day deadline must necessarily be a party, as otherwise the defendant made subject to the deadline would be outside the court's jurisdiction and have no obligation to participate in the action. *See Ross*, 197 S.W.3d at 797-98; *see also Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) (we presume that Legislature is aware of background law and acts with reference to it). Construed together, these provisions and requirements of subsection (a) mean that a claimant must, as a practical matter, obtain service of process, a waiver of service, or an appearance from a physician or health care provider named in the petition before the claimant can satisfy the expert-report requirement as to the physician or health care provider. *Dingler v. Tucker*, 301 S.W.3d 761, 766-67 (Tex. App.—Fort Worth 2009, pet. denied); *Carreras v. Zamora*, 294 S.W.3d 348, 350 (Tex. App.—Corpus Christi 2009, no pet.); *Yilmaz v. McGregor*, 265 S.W.3d 631, 636-39 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

But the fact that a claimant must obtain service, a waiver of service, or an appearance from the defendant before the claimant can be said to have served the expert report on a "party or the party's attorney" does not imply, as Carroll urges, that the Legislature intended section 74.351, subsection (a)'s deadline to run only from the time these requirements are finally met and the defendant is made a party. On the contrary, the Legislature has unequivocally mandated that the

deadline is "not later than the 120th day after the date *the original petition was filed*." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (emphasis added). The Legislature conceivably could have, but did not, opt to make the triggering event the date the named defendants are made parties. Nor did it create any explicit exceptions or tolling mechanisms for delays or difficulties the claimant might encounter in making them parties. *See id.* § 74.351. Instead, the Legislature provided only one means to extend the 120-day deadline for serving an expert report—written agreement of the parties. *See id.* Absent such an agreement—and there was none here—"a trial court has no discretion to grant an extension and must dismiss a case in which a plaintiff fails to timely file a report." *Estate of Regis v. Harris County Hosp. Dist.*, 208 S.W.3d 64, 68 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The net effect of this statutory scheme is that claimants must (1) obtain service of process, a waiver of service, or an appearance from a physician or health care provider named in the petition, and (2) serve the required expert report or reports on that "party or the party's attorney," both within 120 days after the claimant files the petition naming that defendant. *See Dingler*, 301 S.W.3d at 766-67; *Yilmaz*, 265 S.W.3d at 638.

Our construction of section 74.351 is consistent with the Texas Supreme Court's view of the statute as evidenced in its recent *Offenbach* decision. *See Offenbach*, 2011 Tex. LEXIS 128. In *Offenbach*, the supreme court chiefly addressed whether strict application of section 74.351's 120-day deadline for "service" of an expert report might yield in certain circumstances when a claimant has made diligent efforts to timely serve a defendant with an expert report but failed. There was evidence that the claimant had been unable to timely serve a defendant physician with process because the physician's last known address was invalid, the physician had moved frequently and

9

been indefinitely suspended from the practice of medicine, the claimant's certified letters had been returned unclaimed, and the claimant's motion for substituted service was not granted until after the 120-day deadline had expired. *Id.* at *2-4. While leaving open whether a due-diligence-based exception might be recognized under other circumstances, the supreme court held that the claimant had failed to raise a fact issue as to her diligence. *See id.* at *17. The court then offered the following observations:

> The application of the statute in this case . . . is unfortunate and, in part, a consequence of the Legislature's decision to calculate the 120-day expert report deadline from the date of filing the suit rather than its service on the defendant. The statute appears to assume that serving a physician or other health care provider will be simple and straightforward. That, however, is not always the case, and when complications arise, as here, section 74.351(a) presents a very small window through which to serve both the lawsuit and the expert report.
>
> We understand that the deadline is intended to weed out frivolous health care liability claims early in the proceeding. *See Lewis v. Funderburk*, 253 S.W.3d 204, 205 (Tex. 2008) (noting efforts of Legislature "to stem frivolous suits against health care providers"); *Am. Transitional Care Cntrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) (noting that one purpose of the expert-report requirement is to deter frivolous claims). That purpose would not be sacrificed, however, by calculating the expert report deadline from the date the physician or other health care provider becomes a party to the proceeding through service or appearance. Calculating the deadline from that date would also better fit the statute's requirement that the expert report is to be served on "each party or the party's attorney." Tex. Civ. Prac. & Rem. Code § 74.351(a).

*Id.* at *21-22. But the court conceded that any such changes were the prerogative of the Legislature rather than the courts:

> The Legislature, however, has chosen to commence the 120-day period from the date of filing, and "we are not free to rewrite the statutes to reach a result we might consider more desirable, in the name of statutory construction." *Public Utility*

> *Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988). When a statute is unambiguous, our role is to apply it as written despite its imperfections. *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008); *see also Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920) (noting that "[c]ourts must take statutes as they find them"); *but see Univ. of Tex. S.W. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004) (noting that statutes should not be read to create absurdities).

*Id.* at *22.

Although the supreme court was not called upon to address the specific statutory-construction arguments Carroll advances here, it is nonetheless significant that the high court did not question that the Legislature had decided "to calculate the 120-day expert report deadline from the date of filing the suit rather than its service on the defendant," and even went so far as to urge the Legislature to modify that statutory scheme—as the courts could not properly do so—"by calculating the expert report deadline from the date the physician or other health care provider becomes a party to the proceeding through service or appearance." *Id.* at *21-22. Similar to the *Offenbach* court, we conclude that Carroll's proposed construction of section 74.351, subsection (a)'s 120-day deadline advocates what the statute perhaps should provide rather than what it presently does provide. Applying the statute as currently written, we hold that Carroll was required to serve Humsi or her counsel with Patman's report within 120 days of the date Carroll filed her amended petition naming Humsi as a defendant, October 30, 2007, making her deadline February 27, 2008.

In the event we reject her statutory-construction arguments, Carroll urges that she should be considered to have timely served Humsi with Patman's report because Humsi's attorney received a copy of Patman's report within 120 days after Carroll filed her amended petition naming Humsi as a defendant. Humsi acknowledges that her counsel was retained shortly after Carroll filed

11

her amended petition naming Humsi as a defendant, that her counsel also represented one of the co-defendant physicians who were named in the same pleading, and that, at least in that capacity, counsel had received a copy of Patman's report within 120 days after Carroll filed her amended petition. *See Hayes*, 314 S.W.3d at 499-502 (recounting procedural history of Carroll's claims against Humsi's co-defendant physicians and holding that she timely served Patman's January 2008 report on each of them).[4]  The chief problem with this argument is that, as previously indicated, the Legislature expressly required that a claimant timely serve the required expert report or reports "on each *party* or the *party's* attorney," a term that denotes a defendant who has already been served with process, waived service, or entered an appearance in the action.

Carroll counters that nothing in subsection (a) requires that the "party" or "party's attorney" on whom an expert report is served must necessarily be a "party" by the time the report is served.  In her view, a claimant can satisfy the expert report requirement by serving it on a defendant or counsel within the 120-day period, even if the defendant has not yet been made a party, so long as the defendant is made a party at some point thereafter through service of process, waiver of service, or appearance.  We are unpersuaded that subsection (a)'s text leaves room for that interpretation.  Our sister courts, in fact, have overwhelmingly rejected the same argument in light

---

[4] Carroll asserts—and it appears undisputed—that her counsel communicated with Humsi's counsel within the 120-day period regarding whether Humsi would agree to accept service of process through her counsel, and that she instructed her counsel to refuse to accept service on her behalf or even to disclose her current address to Carroll's counsel.  Such facts would be relevant to, at most, whether Carroll would be entitled to some sort of exception to the 120-day deadline based on her diligence in attempting to serve Humsi.  That issue is addressed below.

of subsection (a)'s requirement that a claimant must serve the "party or the party's attorney." *See*

*Dingler*, 301 S.W.3d at 766-67; *Carreras*, 294 S.W.3d at 350; *Yilmaz*, 265 S.W.3d at 636-39.[5]

Carroll emphasizes *University of Texas Health Science Center v. Ripley*, which

involved a health care liability claim that the claimants initially asserted in federal court and

then, after the hospital obtained dismissal on Eleventh Amendment grounds, re-filed it in state court.

230 S.W.3d 419 (Tex. App.—San Antonio 2007, no pet.) (en banc). While the suit was pending in

federal court, the claimants served an expert report on the hospital. Once in state court, the hospital

---

[5] Our assessment of subsection (a)'s text is further supported by the practical difficulties Carroll's construction would invite. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) (stating presumption that Legislature is aware of background law and acts with reference to it.); *Great-West Life & Annuity Ins. Co. v. Texas Attorney Gen. Child Support Div.*, No. 03-10-00225-CV, 2011 Tex. App. LEXIS 864, at *42-43 (Tex. App.—Austin Feb. 3, 2011, no pet. h.) (considering adverse practical consequences of Child Support Division's proposed construction of Lottery Act as additional support for contrary construction apparent from text); *see also* Tex. Gov't Code Ann. § 311.021(3), (4) (West 2005) (presumptions that legislature intended "just and reasonable result" and result "feasible of execution" when enacting statutes); *id.* § 311.023 (5) (courts may consider "consequences of a particular construction" when construing statutes). These difficulties include inviting disputes regarding whether such "premature" service of expert reports through an attorney was within the scope of the attorney's representation or if the representation had been initiated by the time of service. It would also imply that the defendant on whom the report was served would be required to raise any objections to the report's adequacy within 21 days after service—despite that the defendant was not a party, was not within the trial court's jurisdiction, and had no obligation to participate in the action. *See Ross v. National Ctr. for the Employment of the Disabled*, 197 S.W.3d 795, 797-98 (Tex. 2006) (per curiam); *Carreras v. Zamora*, 294 S.W.3d 348, 350 (Tex. App.—Corpus Christi 2009, no pet.); *Yilmaz v. McGregor*, 265 S.W.3d 631, 637-38 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). That implication, as Humsi urges, would present the defendant a Hobson's choice—either risk waiving any objections to personal jurisdiction to preserve objections to the expert report's adequacy, or risk waiving objections to the report's adequacy in order to stand on his rights not to participate in the action. *See Ross*, 197 S.W.3d at 795; *Carreras*, 294 S.W.3d at 350; *Yilmaz*, 265 S.W.3d at 637-38. During oral argument, Carroll suggested that any such difficulties could be avoided by construing the 21-day objection requirement to begin running only after the defendant on whom the expert report has previously been served is finally made a party. However, like her arguments concerning when the 120-day period begins to run, we find no textual support for Carroll's contentions.

13

sought dismissal on the basis that the claimants did not serve (or re-serve) their expert report within 120 days after they re-filed their suit. Applying former section 74.351, subsection (a)—under which the 120-day period was triggered on "the date the *claim* was filed" rather than on the date the "original petition" was filed, as it does currently—the Fourth Court of Appeals, en banc, held that the claimants' service of the expert report during the federal lawsuit sufficed under subsection (a) with respect to the state lawsuit. *Id.* at 421-22; *id.* at 423 (Simmons, J., concurring). Any persuasive value *Ripley* might have here is limited by both the textual differences in the versions of subsection (a) applicable to that case versus here and the case's unique procedural circumstances, which involved federal and state iterations of the same health care liability litigation and a defendant who was a party to both, features not present here. In short, *Ripley* does not alter our assessment that current subsection (a) required Carroll to make Humsi a "party" before she could serve Patman's report on that "party or the party's attorney." *See Dingler*, 301 S.W.3d at 766-67; *Carreras*, 294 S.W.3d at 350; *Yilmaz*, 265 S.W.3d at 636-39; *see also St. Luke's Episcopal Hosp. v. Poland*, 288 S.W.3d 38, 44 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (op. on reh'g) (applying former subsection (a), holding that claimant's furnishing of expert report to defendant's counsel before filing suit did not satisfy service requirement; "because the [plaintiffs] did not serve their expert's report within the 120-day period following their assertion of a health-care-liability claim against appellants, the trial court had no discretion to do anything except dismiss the health care-liability claims against these two defendants with prejudice.").[6]

---

[6] The First Court of Appeals denied en banc consideration in *Poland* over the votes of two dissenting justices who advocated that the pre-suit furnishing of the expert report satisfied subsection (a). *See St. Luke's Episcopal Hosp. v. Poland*, 288 S.W.3d 38, 39 n.1

14

Additionally, even accepting Carroll's position that subsection (a)'s reference to "party or the party's attorney" can be construed to reference defendants who do not become parties until sometime after the expert report is served on them, subsection (a) would still plainly require that both service of the expert report and the defendant's acquisition of party status must occur within 120 days after the claimant files the petition naming the defendant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) ("a claimant shall, *not later than the 120th day after the date the original petition was filed*, serve on each *party* or the *party's* attorney one or more expert reports . . .") (emphases added); *see also Offenbach*, 2011 Tex. LEXIS 128, at *21 ("when complications [in serving process] arise . . . section 74.351(a) presents a very small window through which to serve *both the lawsuit and the expert report*.") (emphasis added). It is undisputed that Humsi was not made a party to Carroll's suit until long after the 120-day period had expired. Consequently, even if we were to accept Carroll's premise that she could satisfy section 74.351, subsection (a) by serving Humsi with Patman's report through her counsel before she became a party, Carroll would still have failed to make Humsi a "party" within the 120-day period, and would not have timely served the report on the "party or the party's attorney."

Finally, Carroll urged in her briefing that we apply an equitable exception to section 74.351, subsection (a)'s 120-day deadline in light of what she terms defendants' "ability to dodge formal service" and potential for "gamesmanship." In the interim prior to oral argument, the Texas Supreme Court decided *Offenbach*, which presented the issue of whether or when such

(Tex. App.—Houston [1st Dist.] 2009, pet. denied); *id.* at 47 (Jennings, J., dissenting to order denying en banc consideration).

an exception might be recognized. The supreme court left open whether strict application of section 74.351's 120-day deadline for serving an expert report might yield in certain circumstances when a claimant has made diligent efforts to timely serve a defendant with an expert report but failed, either because "service" under section 74.351 incorporates common-law due-diligence and relation-back concepts, *see Offenbach*, 2011 Tex. LEXIS 128, at *13, or because the statute must be so construed to prevent Open Courts violations through the imposition of an impossible condition to suit. *Id.* at *19-20. Instead, the supreme court held that even if a due-diligence exception to section 74.351's 120-day deadline existed, the claimant had failed—even under the circumstances presented in that case—to raise a fact issue in that regard. *See id.* at *13-14. As Carroll seemed to acknowledge during oral argument, the record in this case does not demonstrate the sort of diligence that the supreme court seemed to require in *Offenbach*. On this record, we cannot conclude that the district court would have abused its discretion in impliedly finding and concluding that Carroll was not entitled to the equitable exception she claims. *See Bohannon v. Winston*, 238 S.W.3d 535, 538 (Tex. App.—Beaumont 2007, no pet.) ("The potential for gamesmanship does not vest the courts with the power to legislate; instead we must apply the statute as it is written and address a party's misconduct in an appropriate manner when it occurs.").

We hold that the district court would not have abused its discretion in dismissing Carroll's health care liability claim against Dr. Humsi for failing to serve Dr. Patman's expert report within 120 days after she filed her petition naming Humsi as a defendant. This holding, in turn, would have had the effect of mooting Humsi's third ground for dismissal—that Patman's report was inadequate—such that we do not imply findings or conclusions to that effect in support of the

district court's judgment.  *See Rosemond*, 2001 Tex. LEXIS 69, at *9-10.  In any event, we need not reach Carroll's contentions regarding this ground for dismissal.  *See* Tex. R. App. P. 47.1; *but see Hayes*, 314 S.W.3d at 502-08 (holding that district court did not abuse its discretion in holding that same report was adequate).

## CONCLUSION

Like the *Offenbach* court, we are bound to apply section 74.351, subsection (a), of the Civil Practice and Remedies Code as it is currently written, notwithstanding any perceived "imperfections" in the statute's calculation of its 120-day deadline for serving expert reports. *Offenbach*, 2011 Tex. LEXIS 128, at *22.  Having done so, we cannot conclude that the district court abused its discretion in dismissing Carroll's health care liability claim against Dr. Humsi.  We affirm the district court's judgment of dismissal.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   April 13, 2011

17