COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 Pediatrix
 Medical Services Inc., Pediatrix Medical Group, Inc., Enrique Ponte, M.D.,
 Sadhana Chheda, M.D., Furqan Moin, M.D., and Roman Alvarez, M.D.,
  
                            
 Appellants,
  
 v.
  
 Elizabeth
 and Jesus De La O, Individually and as Next Friends of Viviana De La O,
  
                            
 Appellees.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
  '
 
  
 
 
  
  
                   No. 08-10-00252-CV
  
 Appeal from the
  
 205th
 Judicial District Court 
  
 of El
 Paso County, Texas 
  
 (TC#2008-838) 
  
 
 


 

                                                                  O
P I N I O N

Appellants, Pediatrix Medical Services Inc.,
Pediatrix Medical Group, Inc., Enrique Ponte, M.D., Sadhana Chheda, M.D.,
Furqan Moin, M.D., and Roman Alvarez, M.D., appeal the trial court’s order overruling
their objections to two expert reports and denying their motion to dismiss Elizabeth
and Jesus De La O’s health care liability case.  In three issues, Appellants contend that the expert
reports fail to meet the statutory requirements of Section 74.351 of the Texas
Civil Practice and Remedies Code.  For
the following reasons, we affirm.




 

BACKGROUND

On May 10, 2006, Viviana De La O was born
prematurely at twenty-four weeks gestational age, at Del Sol Medical Center to
Elizabeth and Jesus De La O.  As a result
of her prematurity, Viviana was at a high-risk of developing Retinopathy of
Prematurity (ROP).  While in the Neonatal
Intensive Care Unit (NICU), she was referred to Dr. Llamas-Soforo, an
ophthalmologist, for ROP screening. 

On June 19, 2006, at Viviana’s initial ROP
screening, Dr. Llamas-Soforo found no ROP and a follow-up was ordered in four
weeks.  On July 17, 2006, at the first
follow-up exam, Dr. Llamas-Soforo found early-stage ROP in both of Viviana’s
eyes and a second follow-up was scheduled to be conducted in two weeks.  Approximately fifteen days later, on August
1, 2006, Dr. Llamas-Soforo found a more advanced stage of ROP in both eyes and
a third follow up exam was set up on August 7, 2006.  On August 7, 2006, Dr. Llamas-Soforo found
Viviana’s ROP had reached threshold and laser treatment was arranged for August
10, 2006.  After surgery, by October
2007, Viviana was found to be blind in her right eye and suffering from severe
vision restrictions in her left eye. 

At the time of her birth and throughout her
hospitalization, Viviana was treated by Appellant-Neonatologists, Drs. Ponte,
Moin, Alvarez and Appellant-Pediatrician, Dr. Chheda.  Drs. Ponte, Moin, Alvarez, and Chheda were
each identified on and individually signed one or more progress notes
documenting Viviana’s neonatal and ophthalmological care.  In 2006, as part of Viviana’s neonatal care,
a nurse practitioner used RetCam imaging to photograph Viviana’s eyes on August
2, August 9, August 21, and August 31. 
According to Dr. Llamas-Soforo’s deposition testimony, he never received
the August 2 RetCam images, but when they were shown to him at his deposition,
he testified that the photos indicated prethreshold ROP requiring prompt
treatment.

Appellees initially sued Dr. Llamas-Soforo
and other health care defendants, not including Appellants, for damages
allegedly arising from negligence relating to Viviana’s ROP screening and treatment.  On December 30, 2009, Appellees mailed to the
El Paso County District Clerk their second amended petition naming Appellants
as defendants.  The District Clerk
received and filed the mailing on January 4, 2010.  In accordance with Chapter 74 of the Texas
Civil Practice and Remedies Code, Appellees filed two expert reports: one by
Dr. William V. Good, a pediatric ophthalmologist, and another by Dr. Maureen
Sims, a neonatologist.  

Appellants filed written objections to the sufficiency
of the expert reports and moved to dismiss Appellees’ claims because Appellees’
failed to comply with the requirements of Chapter 74.  Appellees responded that both expert reports
constituted a good faith effort to comply with the terms of Chapter 74.  After a hearing, the trial court overruled Appellants’
objections to the expert report, denied their request for dismissal, and found that
the expert reports constituted a good faith effort and met the requirements of Chapter
74.  This interlocutory appeal followed.

DISCUSSION

Appellants raise three issues on appeal.  Appellants first contend that Appellees failed
to serve Dr. Good’s report within 120 days after the second amended petition
was filed.  Appellants next assert that
Dr. Sims is unqualified to render a causation opinion.  In their third issue, Appellants complain
that both expert reports fail to adequately address causation.  Additionally, Appellees ask that we award them
sanctions because Appellants’ appeal is frivolous.




 

Standard of Review

We
review a trial court’s Section 74.351 ruling for an abuse of discretion.  American Transitional Care Ctrs. of Tex.,
Inc. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001).  A trial court abuses it discretion if it acts
in an unreasonable or arbitrary manner, without reference to any guiding rules
or principles.  Walker v. Gutierrez,
111 S.W.3d 56, 62 (Tex. 2003).  A trial
court acts arbitrarily and unreasonably if it could have reached only one
decision, but instead reached a different one. 
See Teixeira v. Hall, 107 S.W.3d 805, 807 (Tex. App. – Texarkana
2003, no pet.).  To that end, a trial
court abuses its discretion when it fails to analyze or apply the law
correctly.  In re Sw. Bell Tel. Co.,
226 S.W.3d 400, 403 (Tex. 2007), citing In re Kuntz, 124 S.W.3d 179, 181
(Tex. 2003).

Whether
Dr. Good’s Expert Report Was Timely Served Within 120 Days of the Date of
Filing of the Second Amended Petition

 

In
Issue One, Appellants contend that Dr. Good’s report was not timely served
within 120 days of the date the second amended petition was filed.  According to Appellants, under the portion of
Rule 5 of the Texas Rules of Civil Procedure known as the mailbox rule,
Appellees’ second amended petition was filed when it was mailed to the clerk on
December 30, 2009.  Appellees’ counter
that their second amended petition was not filed until it was actually received
by the clerk on January 4, 2010.  Here,
the question is whether the second amended petition was filed when it was
deposited in the mail or when it was actually received and filed by the court
clerk.

Applicable Law

Section
74.351(a) of the Civil Practice and Remedies Code requires a claimant pursuing
a health care liability claim to serve any expert reports on each party no
later than 120 days after the original petition is filed.  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a) (West 2011).  Absent a written agreement of the parties to
extend the date for serving any expert reports, if the claimant fails to serve
the required expert reports on a particular defendant within the 120-day time
period, that defendant may obtain both a dismissal of the claim with prejudice
and attorney’s fees.  See id. § 74.351(a)-(b).  The “original petition” that triggers the 120-day
period to serve expert reports with respect to a particular defendant is the
first petition that asserts a health care liability claim against that
defendant.  Carroll v.
Humsi, 342
S.W.3d 693, 697 (Tex. App. – Austin 2011, no pet.), citing Hayes v. Carroll, 314 S.W.3d 494, 502 (Tex. App. – Austin
2010, no pet.).

Traditionally, a
pleading is considered filed upon actual receipt of the pleading by the court
clerk.   Warner v. Glass, 135 S.W.3d 681, 684 (Tex. 2004).  Under the “Enlargement of Time” or mailbox
rule of the Texas Rules of Civil Procedure, “[i]f any document is sent to the proper clerk by first-class
United States mail . . . and is deposited in the mail on or before the last day
for filing same, the same, if received by the clerk not more than ten days
tardily, shall be filed by the clerk and be deemed filed in time.” Tex. R. Civ. P. 5.  The rule applies “[w]hen . . . an act is
required or allowed to be done at or within a specified time . . . .” Id.

Accordingly, Rule
5 does not enlarge the time in which to file a pleading, but instead defines
when it is “deemed filed in time.”  Milam
v. Miller,
891 S.W.2d 1, 2 (Tex. App. – Amarillo 1994, writ ref’d), citing Danesh v. Houston Health Clubs Inc., 859 S.W.2d. 535 (Tex.
App. – Houston [1st Dist.] 1993, writ ref’d). 
Therefore, the U.S. Post Office acts as a branch of the court clerk’s
office for purposes of filing pleadings only when the provisions of Rule 5 are
satisfied.  Id.  The rule applies to
filings that contemplate a filing deadline. 
See Alvarez v. Thomas, 172
S.W.3d 298, 301 (Tex. App. – Texarkana 2005, no pet.) (Rule 5 does not apply if
there is no preset deadline for filing a document; see also In re Hearn, 137 S.W.3d 681, 687 (Tex. App. – San Antonio
2004, no pet.) (where there is no deadline for filing Rule 5 does not deem the
motion filed on the date it is deposited in the mail).  Indeed, if the language of Rule 5 is construed
under its plain meaning, it requires a pleading to be considered filed when it
is deposited in the mail only if the pleading has to be filed on or before the
last day for filing.  Bailey v. Hutchins, 140 S.W.3d 448, 451
(Tex. App. – Amarillo 2004, pet. denied).

Application

In the instant case, it is
undisputed that Appellees’ second amended petition was mailed on December 30,
2009 and it was received and filed by the court clerk on January 4, 2010.  Because there was no preset deadline to file
the second amended petition, the provisions of Rule 5 do not apply.  See In
re Hearn, 137 S.W.3d at 685.  Therefore,
we find that Appellees’ second amended petition was filed on January 4, 2010, the
date the court clerk actually received and filed it, and as such Appellees had
until May 4, 2010, to serve Dr. Good’s report on Appellants.  Accordingly, we find that the trial court did
not err in overruling Appellants’ objections or denying their motion to dismiss
because Appellants were timely served with Dr. Good’s report on May 3, 2010.  Issue One is overruled.

Whether Dr. Sims is Qualified to Opine as to Causation

In Issue Two, Appellants contend that Dr.
Sims is unqualified to render opinions on causation.  Appellees respond that Dr. Sims is qualified
to opine regarding both causation and the applicable standard of care and
alleged breaches because her report demonstrates she has experience in dealing
with ROP and its attendant consequences. 
Appellants counter that Dr. Sims’ training and experience as a
neonatologist does not provide her sufficient expertise to opine that Viviana’s
alleged blindness was caused by the untimely diagnosis and treatment for ROP.  Appellants also contend that Dr. Sims’ report
and curriculum vitae fail to show that she had knowledge, from either
experience or study, concerning the effectiveness of ROP treatments in general or
in Viviana’s particular case.

Applicable Law

An expert report or its accompanying
curriculum vitae must show that the expert is qualified to opine on the subject
matter at issue.  In re McAllen Med.
Center, 275 S.W.3d 458, 463 (Tex. 2008). 
The medical expert need not practice in the same specialty as the
defendant in order to qualify as an expert. 
Roberts v. Williamson, 111 S.W.3d 113, 122 (Tex. 2003).  However, not every licensed physician is always
qualified to testify on every medical question. 
Broders v. Heise, 924 S.W.2d 148, 152 (Tex. 1996).  Thus, the focus of the trial court should not
be on the specialty of the medical expert. 
Roberts, 111 S.W.3d at 122. 
Instead, the focus should be on the medical expert’s “knowledge, skill,
experience, training, or education” concerning the specific issue before the
court which would qualify the expert to give an opinion on that particular
subject.  Broders, 924 S.W.2d at
153-54 (applying Texas Rule of Evidence 702); Blan v. Ali, 7 S.W.3d 741,
746 (Tex. App. – Houston [14th Dist.] 1999, no pet.).  Thus, a medical expert from one specialty may
be qualified to testify if he has practical knowledge of what is traditionally
done by medical experts of a different specialty under circumstances similar to
those at issue in the case.  Keo v. Vu,
76 S.W.3d 725, 732 (Tex. App. – Houston [1st Dist.] 2002, pet. denied).  Certainly, if the subject matter is common to
and equally recognized and developed in all fields of practice, any practitioner
familiar with the subject may testify as to the standard of care.  Id.; Blan, 7 S.W.3d at
745.  However, the proffered medical
expert’s qualifications must be evident from the four corners of his expert report
and curriculum vitae.  See generally
Palacios, 46 S.W.3d at 878; Christus Health Southeast Texas v. Broussard,
267 S.W.3d 531, 536 (Tex. App. – Beaumont 2008, no pet.).  Furthermore, the trial court must ascertain that
the expert does indeed possess the expertise on the subject for which he is giving
an expert opinion.  Palafox v. Silvey,
247 S.W.3d 310, 316 (Tex. App. – El Paso 2007, no pet.).

Application

            Dr.
Sims’ expert report demonstrates that she is a board-certified neonatologist
and pediatrician.  Her report also shows
that she has knowledge and is familiar with the policies and procedures for
ensuring screening for ROP and that she has been involved in the development of
policies and procedures for the care of premature infants for the past twenty
years.  Recited with her report Dr. Sims
states:

I
have personally treated small preterm newborns like Viviana de la O, and I am
familiar with the standards of care for treating such small infants, both at
the physician level and the hospital/nursing/staffing level with respect to
policies and procedures, for ensuring screening for retinopathy of prematurity
(ROP).  I have requested ophthalmologic
consultations from pediatric ophthalmologists to screen preterm infants for
ROP, and I have helped to develop the necessary policies and procedures to
ensure a baby at risk for ROP obtains the necessary care and treatment he or
she needs.

 

            Apart
from her statement that she has requested ophthalmologic consultations from
pediatric ophthalmologists, nothing in Dr. Sims’ report indicates that she has
knowledge, skill, experience, training or education concerning pediatric
ophthalmology, ROP pathology, or the effectiveness of ROP treatments in general
and in Viviana’s case.  Here, the four
corners of Dr. Sims’ report fails to show how she is qualified to render expert
opinions on causation as to Viviana.[1]  Thus, we cannot conclude that Dr. Sims was
qualified to render causation opinions as to Viviana’s blindness.  Cf.
Roberts, 111 S.W.3d at 122 (medical expert qualified because his report
showed that he “studied the effects of pediatric neurological injuries,” had
“extensive experience advising parents about the effects of those injuries,”
and relied on the interpretation of MRIs and CT scans by a pediatric
neurologist); Livingston v. Montgomery, 279 S.W.3d 868, 877 (Tex. App. –
Dallas 2009, no pet.) (medical expert’s report reflected that he had “knowledge
and expertise to recognize the perinatal progression of hypoxia due to
inadequate oxygenation through a compromised uteroplacental unit”).  Accordingly, having found that Dr. Sims was
not qualified to render expert opinions regarding the causal relationship
between Appellants’ alleged breaches of the standard of care and Viviana’s
injuries, we hold that the trial court abused its discretion by overruling
Appellants’ objections as to Dr. Sims’ qualifications.  Issue Two is sustained.

Whether
the Expert Reports of Dr. Good and Dr. Sims

Adequately
Address Causation

 

In Issue Three, Appellants contend
that Dr. Good’s and Dr. Sims’ expert reports fail to adequately address
causation because they lack a sufficiently specific description of the causal
connection between each individual Appellant’s alleged acts in breach of the
standard of care and the alleged harm to Appellees.  Thus, Appellants conclude that the reports do
not constitute a good faith effort to comply with Section 74.351.  Appellees respond that the reports
constituted a good faith effort and that, read together, the two expert reports
meet the statutory requirements.  Having
found that Dr. Sims lacked knowledge, skills, experience, training, or education
to offer causation opinions concerning Viviana’s injuries, we do not address
Issue Three as to the expert report of Dr. Sims.

Applicable Law

An “expert report” is a written report that provides a fair summary
of the expert’s opinions regarding applicable standards of care, the manner in
which the defendant failed to meet those standards, and the causal relationship
between the defendant’s failure and the plaintiff’s injury, harm, or damages
claimed.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (West
2011).  A
causal relationship is established by proof that the negligent act or omission
was a substantial factor in bringing about the harm and that absent said act or
omission, the harm would not have occurred. 
Costello v. Christus Santa Rosa Health Care Corp., 141 S.W.3d
245, 249 (Tex. App. – San Antonio 2004, no pet.).  Accordingly, causation cannot be inferred; it
must be clearly stated.  Castillo v.
August, 248 S.W.3d 874, 883 (Tex. App. – El Paso 2008, no pet.).  Indeed, we may not fill in gaps in a report
by drawing inferences or guessing what the expert meant or intended.  Austin Heart, P.A. v. Webb, 228 S.W.3d
276, 279 (Tex. App. – Austin 2007, no pet.).

In
setting out the expert’s opinions on each of the required elements, the report
must provide enough information to fulfill two purposes if it is to constitute
a good faith effort.  Palacios, 46
S.W.3d at 879.  An objective good faith
effort to comply with the statute is made if the report: (1) informs the
defendant of the specific conduct that the plaintiff has called into question
and (2) allows the trial court to conclude that the claim has merit.  Id. at 879.  A report that merely states the expert’s
conclusions about the standard of care, breach, and causation does not provide
the necessary information to fulfill the dual purposes.  Id. 
Rather,
the expert must explain the basis of his statements to link his conclusions to
the facts.  Bowie Mem.’l Hosp. v.
Wright, 79 S.W.3d 48, 52 (Tex. 2002).

However,
a plaintiff need not present evidence in the report as if it were actually
litigating the merits.  Palacios,
46 S.W.3d at 879.  The report can be
informal, meaning that it does not have to meet the same requirements as the
evidence offered in a summary judgment proceeding or at trial.  Id. 
In addition, a plaintiff may satisfy any requirement for serving an
expert report by serving separate reports from different experts.  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(i) (West 2011).

Application

Dr. Good’s Medical
Expert Report

Appellants do not challenge Dr. Good’s
qualifications or the adequacy of his discussion of the applicable standard of
care or the breach of the standard of care. 
Appellants contend only that the trial court erred in overruling their
objections to the adequacy of Dr. Good’s report because he failed to adequately
address the causal relationship between Appellants’ alleged failure to (1)
ensure proper follow-up exams by Dr. Llamas-Soforo and Viviana’s alleged
injury; (2) ensure that Dr. Llamas-Soforo timely received the August 2, 2006,
RetCam images and Viviana’s injury; and (3) establish policies and procedures
for ROP examinations and RetCam Imaging and Viviana’s injury.

Dr. Good’s
report explains his qualifications and experience as a pediatric ophthalmologist,
and then sets out the factual recitations surrounding Viviana’s birth and the
medical care she received while in the NICU.  Dr. Good’s report identifies the standard of
care for infants at risk for ROP along with each individual Appellant’s duty to
ensure that Viviana received the appropriate level of care as she was at risk
for ROP.  Dr. Good’s report also identifies
the conduct that has been called into question, the applicable standard of
care, the manner in which Appellants failed to meet the standards, and the
causal relationship between that failure and the harm Viviana suffered as a
result.  In particular, Dr. Good’s report
opines as follows:

Drs.
Ponte, Chheda, Moin, and Alvarez had a duty to ensure a second follow up exam
occurred before 8/1/06.  Because the 7/17
exam was untimely, the 8/1 exam was also untimely, as it was “2 wks” from an
untimely exam.  Standard of care requires
that the 8/1 follow up exam be conducted at least 1 week earlier.  The reason for this is that Vivian was high
risk for significant ROP, and the rate of progression of ROP is important in
monitoring the disease, and learning whether laser intervention should ensue.

 

.   
.    .

 

If
Drs. Ponte, Chheda, Moin, and Alvarez provided standard of care, a follow up
exam would have taken place prior to 8/1/06, wherein the likelihood would have
been that Viviana had the type of prethreshold ROP that should have been
treated earlier, with properly-administered ablative therapy.  By providing earlier ablative therapy,
Vivana’s bilateral blindness, within a reasonable degree of medical
probability, would have been avoided. 
Instead, Viviana’s prethreshold ROP was allowed to worsen between 8/2
and the 8/10 surgery, impairing the success of the surgery.  Drs. Ponte, Chheda, Moin, and Alvarez’s
failure to provide this standard of care is a proximate cause of Viviana’s
blindness.

 

Looking to the four corners of the report,
Dr. Good identified what conduct Appellants should have engaged in and what
happened when they failed to engage in that conduct.  Dr. Good’s report adequately links the facts
to the alleged acts causing Viviana’s injuries. 
See Wright, 79 S.W.3d at 52. 
Thus, we find that Dr. Good’s report was sufficient to establish
causation and the report constitutes a good faith effort to provide a fair
summary of his causation opinions.  See
Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a), (r)(6) (the expert report must identify the manner in which
the defendant’s conduct failed to meet the standards of care and the causal
relationship between that failure and the injuries claimed); Doades v. Syed,
94 S.W.3d 664, 671-72 (Tex. App. – San Antonio 2002, no pet.); Rittmer v.
Garza, 65 S.W.3d 718, 722-23 (Tex. App. – Houston [14th Dist.] 2001, no
pet.); Taylor v. Christus Spohn Health Sys. Corp., 169 S.W.3d 241, 244
(Tex. App. – Corpus Christi 2004, no pet.).

Dr. Good’s report
informs Appellants of the conduct in question and provides a basis for the
trial court to determine the merit of Appellees’ claims.  Accordingly, the trial court did not abuse
its discretion in overruling Appellants’ objections to Dr. Good’s report.  Appellants’ third issue is overruled.

SANCTIONS

            Appellees
argue that we should award damages to them because it is “evident” that Appellants
“have failed to identify any legitimate basis for concluding that the expert
reports are insufficient under section 74.351.” 
While we are authorized to award just damages if we determine that an
appeal is frivolous, we exercise that authority only if the record shows that
the appellant did not act in good faith and had no reasonable expectation of
reversal.  Tex. R. App. P. 45; Faddoul v. Oaxaca, 52 S.W.3d 209,
213 (Tex. App. – El Paso 2001, no pet.). 
In this case, Appellants have submitted a thorough brief and have shown that
they have acted in good faith.  Therefore,
we cannot conclude that Appellants had no reasonable grounds to believe the
lower court’s decision would be reversed.

CONCLUSION

            Although
we have determined that the trial court erred by overruling the objections to
the expert report of Maureen Sims, M.D., the trial court properly overruled the
objections to the expert report of William Good, M.D.  We therefore affirm the trial court’s order
denying the motion to dismiss.

 

                                                                        GUADALUPE
RIVERA, Justice

March 14, 2012

 

Before Rivera, J., Antcliff, J., and Chew, C.J., (Senior)

Chew, C.J., (Senior), sitting by assignment, concurring




 

CONCURRING OPINION

 

            I
respectfully concur.  I do not believe
that Dr. Sims’ expert report is inadequate. 
See Pediatrix Medical Group v.
Robinson, 352 S.W.3d 879 (Tex. App. – Dallas 2011, no pet.).

 

March 14, 2012                                   DAVID
WELLINGTON CHEW, Chief Justice (Senior)











[1]
Although Dr. Sims refers to her curriculum vitae in her report the record
contains no such curriculum vitae.